**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

GARY L. JENKINS,
>               Appellant,

>         v.

DEPARTMENT OF HEALTH AND
>   HUMAN SERVICES,
>               Agency.

DOCKET NUMBER
DC-0752-12-0586-B-2

DATE: February 2, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

James L. Fuchs, Esquire, Pikesville, Maryland, for the appellant.

Sara M. Klayton, Esquire, Washington, D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the remand initial decision, which affirmed the agency's removal action.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review.  We MODIFY the initial decision to address the agency's compliance with the requirements of minimum due process in effecting the removal action and we VACATE the administrative judge's alternative findings concerning the appellant's whistleblowing claim.  Except as expressly MODIFIED by this final order, we AFFIRM the initial decision.

¶2        Effective November 24, 2008, the agency removed the appellant from his position as GS-12 Biologist at the National Institutes of Health (NIH).  *Jenkins v. Department of Health & Human Services*, MSPB Docket No. DC-0752-12-0586-B-2, Remand File (RF), Tab 8 at 4.  The agency determined that he:  (1) removed Government property without authorization; (2) provided false information to a supervisor;  (3) responded to a supervisor in a disrespectful manner; (4) inappropriately sent emails which contained NIH scientific information and management decisions to non-NIH email addresses;  and  (5) misused a Government computer.  *Id.* at 5-8, 19-34.

¶3        The appellant filed an appeal with the Board regarding his removal.  *Jenkins v. Department of Health & Human Services*, MSPB Docket No. DC-0752-12-0586-I-1, Initial Appeal File (IAF), Tab 1.  He raised affirmative defenses of: (1) discrimination based on sex, sexual orientation, and religion; (2) reprisal for equal employment opportunity (EEO) activity; and (3) whistleblower reprisal.  *Id.* at 5, 7; IAF, Tab 4; RF, Tab 22.  He requested a hearing.  IAF, Tab 1 at 3.

¶4    After holding the requested hearing, the administrative judge issued a remand initial decision affirming the removal action. RF, Tab 41, Remand Initial Decision (RID). She found that: (1) the agency proved all of its charges and specifications by preponderant evidence; (2) there was a clear nexus between the sustained charges and the efficiency of the service; and (3) the penalty of removal was reasonable.[2] RID at 8-30, 47-48. She also found that the appellant failed to prove his affirmative defenses by preponderant evidence. RID at 31-47.

¶5    The appellant has filed a petition for review. *Jenkins v. Department of Health & Human Services*, MSPB Docket No. DC-0752-12-0586-B-2, Remand Petition for Review (RPFR) File, Tab 1. He disputes the seriousness of the charges, the reasonableness of the penalty, and the administrative judge's findings concerning his affirmative defenses. *Id.* He raises various arguments regarding the administrative judge's credibility findings, her conduct at the hearing, and her weighing of the evidence. *Id.* He also appears to allege that the agency violated his due process rights by denying him a meaningful opportunity to respond to its proposal notice. *Id.* The agency filed a response in opposition to the petition for review, to which the appellant replied. RPFR File, Tabs 3-4.

The agency proved all 5 of its charges by preponderant evidence.

*Charges 1 through 3*

¶6    The agency charged the appellant with removing Government property without authorization (Charge 1) because he: (1) took 18 lab notebooks from the locked filing cabinet where they were usually stored and removed them from the building; (2) emailed an electronic copy of genotyping data found in one of the

---

[2] This appeal was previously before a different administrative judge, who dismissed it as untimely filed. IAF, Tab 19. The Board granted the appellant's petition for review of that decision and remanded the appeal for a timeliness hearing. *Jenkins v. Department of Health & Human Services*, MSPB Docket No. DC-0752-12-0586-I-1, Remand Order (June 18, 2013). On remand, the current administrative judge held a timeliness hearing and found that the appellant established by preponderant evidence that his appeal was timely filed. RID at 2-7. The agency does not challenge this finding and we discern no basis to disturb it.

aforementioned lab notebooks from his Government email address to his personal email address; and (3) attempted to email the entire Clinical Laboratory Improvement Amendments (CLIA) master database from his Government email address to his personal email address, all without authorization. RF, Tab 8 at 19-22.

¶7        The agency charged the appellant with providing false information to a supervisor (Charge 2) because when the proposing official called him regarding the notebooks: (1) the appellant stated that an individual he identified as a "judge" had advised him to take them as evidence for his EEO complaint, but that individual was actually an EEO investigator and denied providing that advice; and (2) the appellant denied making any copies of the data from the lab notebooks although, as discussed above, it was later discovered that he had transmitted genotyping data to his personal email address and also attempted to transmit the CLIA master database to his personal email address.[3] *Id.* at 22-23.

¶8        The agency also charged the appellant with responding to a supervisor in a disrespectful manner (Charge 3) because when the proposing official directed him to return the notebooks during the aforementioned telephone conversation, the appellant responded in a disrespectful tone that he would think about it and refused to disclose the location of the notebooks. *Id.* at 23.

¶9        The appellant admitted that: (1) he took the notebooks from the lab; (2) he "obviously knew it was government property"; and (3) when the proposing official directed him to return the notebooks, he responded that he would "think about it." *Jenkins v. Department of Health & Human Services*, MSPB Docket No. DC-0752-12-0586-B-2, September 23, 2014 Hearing Transcript (HT) at 257:7-9,

---

[3] The agency conceded that the appellant did not succeed in transmitting the CLIA database to his personal email address because NIH's computer system blocked it. RF, Tab 8 at 22. Thus, it could be argued that the agency did not prove this specification of Charges 1 and 2. Notwithstanding, the charges still could be sustained based upon the other specifications. *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990).

258:6-18, 261:13-18 (testimony of the appellant); *see Cole v. Department of the Air Force*, [120 M.S.P.R. 640](#), ¶ 9 (2014) (stating that an appellant's admission to a charge can suffice as proof without additional proof from the agency). Further, the record contains contemporaneous evidence indicating that the appellant claimed that a "judge" had advised him to take the notebooks; however, the agency inquired of this individual, who denied the claim. RF, Tab 9 at 29, Tab 18 at 66, 68. There is also evidence that the appellant sent genotyping data, and attempted to send a copy of the CLIA database, to his personal email address. RF, Tab 11 at 62-75, Tab 12 at 18-19. The proposing official testified that the appellant was not authorized to remove any of these materials from the lab. *Jenkins v. Department of Health & Human Services*, MSPB Docket No. DC-0752-12-0586-B-2, October 21, 2014 Hearing Compact Disc (HCD) (testimony of the proposing official). On review, the appellant does not dispute any of the aforementioned evidence. Accordingly, we agree with the administrative judge that the agency proved Charges 1 through 3 by preponderant evidence.

*Charge 4*

¶10    The agency charged that the appellant inappropriately sent emails to non-NIH email addresses containing information regarding NIH official business because he forwarded numerous emails containing scientific material and management-related decisions to outside parties who had no business reason to receive the information. RF, Tab 8 at 23-26.

¶11    The record contains copies of all the emails the appellant forwarded, as described in the agency's proposal notice. RF, Tab 9 at 42-44, 45-49, 50-51, Tab 10 at 4-6, 69-74, Tab 11 at 11-16, 19-22, Tab 12 at 4-5, 8-10, 21-26. The appellant does not dispute this evidence on review, but rather, argues that it is "not uncommon" for employees to engage in such conduct and "[w]hether appropriate or not, this . . . does not generally rise to the level of the type of conduct upon which a proposed removal would be based." RPFR File, Tab 1 at 22. Given that the appellant concedes that he engaged in the misconduct, we

discern no basis to disturb the administrative judge's finding that the agency proved this charge by preponderant evidence.[4]

*Charge 5*

¶12    The agency charged the appellant with misusing a Government computer because he stored "racial and sexually explicit material" on his Government computer, failed to delete racial and sexually explicit emails he received at his Government email address, and forwarded several of those emails to outside email addresses. RF, Tab 8 at 26-30.

¶13    The administrative judge found that the agency proved this charge, including all 18 specifications, by preponderant evidence. RID at 24-30. On review, the appellant appears to challenge this finding. He states that the deciding official—when asked at the hearing to identify the racist material the appellant allegedly stored and disseminated—cited only to the photo described in specification 1—a photo depicting President Obama standing in a uniform in front of a southern-style mansion, with President Clinton and his wife standing on the porch, RF, Tab 8 at 55. RPFR File, Tab 1 at 22. He disputes that the photo is racist and states that it could equally be viewed as "political or satiric."[5] *Id.* He further claims that he did not create or disseminate the pornographic material at issue. *Id.* at 23. He also contends that the agency's witnesses had no firsthand knowledge of the contents of his computer and finds it suspicious that the agency failed to introduce testimony from an agency information technology specialist who did have such knowledge. *Id.* at 23-24.

---

[4] We will consider the appellant's argument, that other employees engaged in similar misconduct but were not disciplined, in our analysis of his discrimination claims, *infra* ¶¶ 22-24, and the imposition of the penalty, *infra* ¶¶ 25, 28.

[5] We do not agree with the appellant's assessment of the photo cited in specification 1. However, even if we were to find that specification 1 does not support the charge, the charge still would be sustained based on the remaining 17 specifications. *See Burroughs*, 918 F.2d at 172.

¶14    The appellant's arguments are wholly without merit. The record contains copies of all the materials specified in Charge 5 and their contents are as described in the proposal notice.[6] RF, Tab 8 at 46-52, 55-56, Tab 10 at 16-26, 29-62, 66-68, Tab 11 at 4-10, 17-18, 42-61, Tab 12 at 6-7, 29-56, Tab 13 at 31-33, Tab 15 at 13-19. The record reflects that the appellant forwarded some of these emails to outside email addresses, which do not appear to be his own. RF, Tab 10 at 16, 66, Tab 11 at 61. Further, the appellant testified that he forwarded some of the sexually explicit emails to his personal email account. HT at 264:7-9 (testimony of the appellant); *see* RF, Tab 10 at 31, Tab 11 at 6, 42, Tab 12 at 29. Thus, we agree with the administrative judge that preponderant evidence supports this charge. Accordingly, we conclude that the administrative judge correctly determined that the agency proved all five charges.

The appellant failed to prove his affirmative defenses.

*Whistleblower Reprisal*

¶15    In a removal appeal, an appellant's claim of whistleblowing reprisal is treated as an affirmative defense. *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 12 (2015). In such an appeal, once the agency proves its initial case by a preponderance of the evidence, the appellant must show by a preponderance of the evidence, in pertinent part, that he made a protected disclosure under 5 U.S.C. § 2302(b)(8). *Id.* A protected disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

---

[6] The appellant argues that this evidence was not properly authenticated and should be "entirely discarded." RPFR File, Tab 1 at 24. However, there is no evidence that before or at the hearing he objected to the admission of these documents, which were included in the agency file. RF, Tab 26 at 4-7. Thus, he is precluded from objecting to this evidence on review. *See Brown v. Department of the Navy*, 57 M.S.P.R. 621, 624-25 (1993).

*See* 5 U.S.C. § 2302(b)(8); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015).

¶16 The appellant alleged that the agency removed him in retaliation for a July 2008 email in which he alleged that the agency acted unethically when it failed to give him authorship credit for research he did, and instead falsely credited an agency employee whose research was unreliable. RF, Tab 9 at 74-76, Tab 22 at 10, Tab 26 at 5, Tab 35 at 6; HT at 268:4-14 (testimony of the appellant). The administrative judge found that these allegations did not constitute protected disclosures, noting that: (1) although she ordered the appellant to identify whether his disclosures concerned a violation of law, rule or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or substantial and specific danger to public health or safety, RF, Tab 17 at 12-13, Tab 22 at 10-13, he failed to do so; and (2) she nonetheless considered whether the appellant's disclosures constituted gross mismanagement or a substantial and specific danger to public health or safety, and concluded that they did not. RID at 31-33.

¶17 On review, the appellant again argues that he was removed in retaliation for the aforementioned email. RPFR File, Tab 1 at 10-11. However, he does not identify any error with the administrative judge's finding that he failed to establish that he made a protected disclosure. Accordingly, we will not disturb the administrative judge's well-reasoned findings concerning this affirmative defense.[7] *See* 5 C.F.R. § 1201.115(b).

---

[7] The administrative judge also found, in the alternative, that even if the appellant had established that he made a protected disclosure, he would nonetheless be unable to prevail on this defense because the agency proved by clear and convincing evidence that it would have removed him, even absent such a disclosure. RID at 33-37. However, Congress, in enacting the Whistleblower Protection Enhancement Act of 2012, determined that the Board may not proceed to the clear and convincing evidence test unless it has first made a finding that the appellant established a prima facie case of whistleblower reprisal. *See* Pub. L. No. 112-199, § 114(b), 126 Stat. 1465, 1472. We thus vacate these alternative findings.

*EEO Reprisal*

¶18    An appellant asserting an affirmative defense of EEO reprisal bears the burden of showing by preponderant evidence that his EEO activity was a motivating factor in the contested personnel action.[8] *Savage v. Department of the Army*, <u>122 M.S.P.R. 612</u>, ¶ 51 (2015).[9]

¶19    The appellant argues that the administrative judge failed to properly weigh the evidence supporting his EEO retaliation claim, including that the proposing official:   (1) testified that he probably had threatened to go to the EEO investigator's supervisor "because the investigator had accepted [the appellant's] retaliation complaint" regarding a suspension which the proposing official had proposed against the appellant; (2) became critical of the appellant's performance and time and attendance, and proposed his removal, only after he engaged in EEO activity; (3) was motivated to retaliate against the appellant by his removal of the lab notebooks to use as evidence in his EEO complaint; (4) "made gratuitous remarks" about the appellant's EEO complaints and his right to file them; and (5) gave inconsistent testimony as to whether he had discussed the appellant's EEO complaint with the appellant's day-to-day supervisor, C.H.   RPFR File, Tab 1 at 6-10, 15-16, 26.   He also identified alleged comments and actions by C.H. that evidenced retaliatory animus. *Id.*

---

[8] There is no dispute that the appellant engaged in protected EEO activity, of which the proposing and deciding officials were aware prior to his removal.  RF, Tab 7 at 10, 15-16; HT at 201:5-13 (testimony of the deciding official); HCD (testimony of the proposing official).

[9] In *Savage*, which was issued after the initial decision in this appeal, the Board clarified the evidentiary standards and burdens of proof under which the Board analyzes claims of discrimination and reprisal under <u>42 U.S.C. § 2000e-16</u>. *Savage*, <u>122 M.S.P.R. 612</u>, ¶¶ 42-43, 51.  We find that applying the analytical framework in *Savage* would not change the result in this case as to the appellant's affirmative defenses of EEO reprisal and discrimination based on sex, sexual orientation and religion.

¶20    The administrative judge explicitly mentioned almost all of the aforementioned evidence.[10] RID at 38-43. She concluded that while the evidence showed that the removal action could have been retaliation, there was ultimately no genuine nexus between the alleged retaliation and the appellant's removal.[11] RID at 42. In reaching this conclusion, she considered that: (1) the charges against the appellant are very significant; (2) the deciding official testified persuasively that his decision to remove the appellant was based only upon the misconduct with which he was charged, and was not influenced by C.H. or the proposing official; and (3) the deciding official had no significant motive to retaliate against the appellant for his EEO activity. RID at 42-43. We discern no basis to disturb this analysis. The appellant's mere disagreement with the administrative judge's weighing of the evidence does not establish a basis for review. *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (mere reargument of issues already raised and properly resolved by the administrative judge below do not establish a basis for review).

---

[10] She did not mention in her analysis of the appellant's EEO reprisal claim the allegedly inconsistent testimony, a statement by C.H. that he checked his car for explosives he feared might be planted by the appellant, or the appellant's asserted reason for removing the lab notebooks. However, this does not mean that she did not consider these matters. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984) (finding that an administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Further, because the administrative judge found that the deciding official was not improperly influenced by C.H., his statements about, and conduct toward, the appellant are irrelevant. RID at 41-43; *cf. Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 23 (2014) (holding that an appellant can demonstrate prohibited animus in a whistleblower reprisal claim by showing that an individual with knowledge of the appellant's protected disclosure influenced the deciding official accused of taking the personnel action).

[11] We interpret the administrative judge's finding that there was no "genuine nexus" as the same as a finding that the appellant failed to meet his burden to prove that his protected activity was a "motivating factor" in his removal. *See Savage*, 122 M.S.P.R. 612, ¶ 41.

*Sex, Sexual Orientation, and Religious Discrimination*

¶21        An appellant asserting an affirmative defense of prohibited discrimination under 42 U.S.C. § 2000e-16 bears the burden of showing by preponderant evidence that his protected status was a motivating factor in the contested personnel action. *Savage*, 122 M.S.P.R. 612, ¶ 51.

¶22        The appellant contends that he was discriminated against based on his sex, sexual orientation and religion. As evidence, he states that: (1) another agency employee did not comply with required security procedures in maintaining her lab notebooks, but was not disciplined; (2) agency management singled him out for time and attendance related issues, although other employees were not disciplined for being frequently absent from the lab; (3) agency management denied him authorship credit for his work; and (4) some of the inappropriate emails he received were sent by agency employees, whom the agency did not investigate. RPFR File, Tab 1 at 21, 25-26, 29. He further claims that C.H. called him a "pathetic little man"; made a disparaging comment about his visits to a gym, which he perceived as a "code comment upon" his sexual orientation; and stated that he routinely checked to ensure that the appellant had not planted any explosives under his car. *Id.* at 5.

¶23        As to the employees whom the appellant alleged received more favorable treatment than he did, the administrative judge found that: (1) the appellant failed to prove that the one employee he identified with specificity was charged with, or committed, similar misconduct; and (2) the appellant's generalized assertions that other employees received more favorable treatment, unsupported by specific evidence, were not sufficient to support a disparate treatment claim. RID at 45-46. Again, we discern no basis to disturb this analysis, and the appellant's mere disagreement with the administrative judge's findings does not establish a basis for review. *See Broughton*, 33 M.S.P.R. at 359; *see also Savage*, 122 M.S.P.R. 612, ¶¶ 42, 51 (discussing the types of evidence on which an appellant may rely in proving an affirmative defense of discrimination or

retaliation in violation of title VII, including direct evidence, a convincing mosaic of evidence from which discrimination can be inferred, comparator evidence, and evidence that the agency's stated reason for its action is pretextual); *Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶ 27 (2014) (observing that employees are similarly situated for purposes of a disparate treatment discrimination claim if all relevant aspects of their employment are nearly identical).

¶24    To the extent that C.H. harbored discriminatory animus against the appellant based upon his sex, sexual orientation or religion, it is irrelevant because the appellant did not show that C.H. exerted any influence over the deciding official's decision. The deciding official denied that C.H. made any attempt to influence him. HT at 207:16-208:1 (testimony of the deciding official). The deciding official also testified that he was unaware of the appellant's sexual orientation and religion when he reached his decision. HT at 206:14-207:12 (testimony of the deciding official). Consequently, we agree with the administrative judge's determination that the appellant failed to prove any of his affirmative defenses.

The penalty of removal was reasonable and promoted the efficiency of the service.

¶25    The appellant argues that the penalty of removal was unreasonable. He disputes the seriousness of the misconduct alleged in Charge 1, arguing that: (1) his actions did not compromise confidentiality because the information contained in the notebooks would not have been identifiable if viewed by outside persons; (2) the agency failed to prove that it suffered any negative consequences because he removed the notebooks; and (3) he returned the notebooks within 2 hours of being directed to do so. RPFR File, Tab 1 at 17-18, 20. He contends that the administrative judge should have weighed the seriousness of the offense against the reason he removed the notebooks from the lab; namely, that he needed to preserve evidence for his EEO complaint, which he apparently believed the

agency would have otherwise destroyed. *Id.* at 18-19, 29. As to Charge 4, he states that it is not uncommon for employees to send emails to their private email accounts and that such conduct does not warrant removal. *Id.* at 22. As to Charge 5, he claims that "it would have taken considerable effort on his part to remove" pornographic material from his computer.[12] *Id.* at 23. He also believes that the administrative judge and the agency failed to give sufficient weight to his history of good performance and conduct in assessing the appropriate penalty. *Id.* at 25.

¶26    Where, as here, all of the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 25 (2014). In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Id.* The Board recognizes that its function is not to displace management's responsibility or to decide what penalty it would impose, but to assure that management judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Id.* Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.*

¶27    In evaluating whether a penalty is reasonable, the Board will consider, first and foremost, the nature and seriousness of the misconduct. *Von Muller v. Department of Energy*, 101 M.S.P.R. 91, ¶ 23, *aff'd*, 204 F. App'x 17 (Fed. Cir. 2006), *modified on other grounds by Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶¶ 12-15 (2010). We agree with the administrative

---

[12] At the hearing, the appellant denied storing such materials on his computer. HT at 264:20-22 (testimony of the appellant).

judge's and the agency's conclusion that the proven misconduct in this matter is serious enough to warrant removal. Indeed, the Board has affirmed the penalty of removal in circumstances similar to those presented here. *See Von Muller*, 101 M.S.P.R. 91, ¶¶ 2, 23 (affirming the removal of a nonsupervisory employee, with over 21 years of Federal service and no prior discipline, for sending sexually explicit and other inappropriate, nonwork related emails from his agency email address and failing to follow supervisory instructions); *Redfearn v. Department of Labor*, 58 M.S.P.R. 307, 309-10, 316-17 (1993) (affirming the removal of an employee based on charges of insubordination and insolent behavior); *Clark v. Equal Employment Opportunity Commission*, 42 M.S.P.R. 467, 469-70, 478 (1989) (affirming the removal of an employee who without authorization removed official Government records, misused them as evidence in a lawsuit he had filed against the agency, and failed to follow instructions to return them).

¶28      The appellant's arguments to the contrary are without merit. As to Charge 1, the administrative judge considered the appellant's purported reason for removing the notebooks and found that, even if he did remove them to preserve evidence for his EEO complaint, this would not negate the facts that the notebooks were Government property and he removed them without authorization. RID at 14. The appellant's mere disagreement with this analysis provides no basis for review. *See Broughton*, 33 M.S.P.R. at 359. Moreover, the record evidence belies the appellant's assertion that the agency did not suffer any adverse consequences as a result of the misconduct underlying Charge 1. Because the appellant breached confidentiality procedures by removing the notebooks, the proposing official had to contact outside affiliates to inform them of the breach, which could have jeopardized the agency's reputation. RF, Tab 8 at 16, 35-45. As to Charge 4, the appellant's conclusory statement that it is not uncommon for employees to send emails to their private email accounts provides no basis to disturb the agency's penalty, particularly considering the seriousness

of the other charges. As to Charge 5, the appellant's claim that it would have taken considerable effort on his part to remove the inappropriate materials from his computer is wholly unpersuasive and does not constitute a mitigating factor.

¶29 We recognize, as did the deciding official and the administrative judge, RID at 47; RF, Tab 8 at 6, the extensive length of the appellant's Federal service[13] and that he was rated fully successful on his most recent performance appraisal. We do not agree with the appellant, however, that these mitigating factors outweigh the aggravating factors in this case. *See Von Muller*, 101 M.S.P.R. 91, ¶ 23. In addition to the seriousness of the misconduct here, the agency considered that the appellant was previously suspended for 3 calendar days in September 2008, for failing to follow instructions, sending an unprofessional email, and engaging in disrespectful and disruptive conduct. RF, Tab 8 at 6, Tab 9 at 56-63; *see Bolling v. Department of the Air Force*, 9 M.S.P.R. 335, 339-40 (1981) (discussing the generally limited scope of Board review of prior disciplinary actions). Further, the agency considered the appellant's unlikely potential for rehabilitation. RF, Tab 8 at 6. Accordingly, we discern no basis to disturb the administrative judge's determination to sustain the agency's chosen penalty of removal.

The appellant's claims concerning alleged adjudicatory errors do not establish a basis for review.

¶30 The appellant alleges that the administrative judge erred in limiting the proposing official's testimony regarding how he was appointed to his position. RPFR File, Tab 1 at 16 n.5, 28-29. He asserts that the proposing official's hearing testimony on this issue contradicted his deposition testimony and, as

---

[13] In his written reply, the appellant stated that he had been working at NIH for 16 years. RF, Tab 8 at 11. The deciding official testified that the agency's records indicated that the appellant had worked there for 13 years. HT at 175:15-22 (testimony of the deciding official). In the agency's decision notice, the deciding official stated that he considered that the appellant had 15 years of Federal service. RF, Tab 8 at 6. These apparent discrepancies are not sufficiently significant to change our analysis.

such, bears upon his credibility.[14] *Id.* At the hearing, the administrative judge overruled the appellant's objection on this point, stating that any inconsistent testimony as to the circumstances under which the proposing official was appointed to his position in the lab would not affect her assessment of his credibility. HCD (discussion during testimony of the proposing official). We discern no basis to disturb that ruling. It is well settled that even if a witness is not credible on one point, it does not necessarily mean that the remainder of his testimony lacks credibility. *Craft v. Department of Veterans Affairs*, 78 M.S.P.R. 374, 380 (1998); *Boscoe v. Department of Agriculture*, 54 M.S.P.R. 315, 323 (1992). This is particularly true where, as here, the allegedly inconsistent testimony has no direct relation to the facts surrounding the charged misconduct. *See Boscoe*, 54 M.S.P.R. at 323.

¶31    The appellant also contends that the administrative judge improperly coached a Human Resources (HR) Specialist's testimony regarding whether the proposing official wanted the appellant to be removed from the outset of the agency's investigation into the appellant's misconduct. RPFR File, Tab 1 at 14, 28; *see* HT at 108:5-117:2 (testimony of the HR Specialist). At the hearing, the appellant, who was represented by an attorney, did not object to the administrative judge's conduct in addressing the witness. HT at 108:5-117:2 (testimony of the HR Specialist). As such, he is precluded from raising this argument now. *See Brown*, 57 M.S.P.R. at 625.

¶32    In any event, assuming arguendo that this was error, it did not prejudice the appellant's substantive rights and, therefore, does not warrant reversal of the initial decision. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282

---

[14] The appellant further argues that the administrative judge failed to consider that the proposing official appeared "unduly agitated and nervous at the hearing." RPFR File, Tab 1 at 16. The appellant's subjective perception of this witness' demeanor does not provide a sufficiently sound basis for us to overturn the administrative judge's credibility determinations. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

(1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). As an initial matter, this information is not in dispute. The proposing official conceded that before the agency conducted its investigation into the contents of the appellant's computer, he was already of the opinion that the appellant's unauthorized removal of the notebooks alone might be serious enough to warrant removal. HCD (testimony of the proposing official). Moreover, the proposing official's purported desire to remove the appellant is irrelevant because he was not the ultimate decision-maker in this matter and, as explained above, the appellant has not shown that the proposing official influenced the deciding official's decision.

The agency afforded the appellant minimum due process.

¶33 Before taking an appealable action that deprives a tenured Federal employee of his property right in his employment, an agency must provide the employee with prior notice and a meaningful opportunity to respond, i.e., an opportunity to present a response, either in person or in writing, why the proposed action should not be taken. 5 U.S.C. § 7513(b); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543-46 (1985).

¶34 There can be no dispute that the agency afforded the appellant the opportunity to submit an oral and written reply to the proposed action. RF, Tab 8 at 33. The appellant submitted only a written reply, after being granted an extension for his attorney to review the materials and prepare a response. *Id.* at 9-12; HT at 281:19-282:1 (testimony of the appellant). The deciding official referenced the reply in his decision letter and testified in detail regarding how he considered the appellant's reply. RF, Tab 8 at 6; HT at 159:4-162:17 (testimony of the deciding official).

¶35 The appellant appears to allege, however, that he did not receive a meaningful opportunity to respond to the charges against him because the removal decision was predetermined. *See Loudermill*, 470 U.S. at 542-43, 546

(discussing a tenured public employee's right to invoke the discretion of the deciding official prior to termination); RPFR File, Tab 1 at 11-13. Specifically, he claims that the decision process was "tainted" because: (1) the deciding official already had determined to remove him before being appointed as deciding official and before the agency had completed its investigation into his misconduct; (2) the proposing official inappropriately advised the deciding official to limit himself to considering the information contained in the proposal notice; and (3) the deciding official failed to thoroughly gather and evaluate all of the evidence in reaching his decision.[15] RPFR File, Tab 1 at 11-13. He states that the administrative judge improperly failed to consider this evidence and argues that the removal action must be reversed. *Id.*

¶36        We find that the agency did not violate the appellant's due process rights. At the hearing, the proposing official denied discussing the proposal notice with the deciding official, other than to notify him that it was forthcoming and that they should not discuss it. HCD (testimony of the proposing official); *see Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) (observing that not every ex parte communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding; rather, only ex parte communications that introduce new and material information to the deciding official will violate the due process guarantee of notice). The deciding official similarly testified that he had no specific discussions with the proposing official regarding the proposed removal, and that the proposing official

---

[15] The administrative judge did not address this due process issue in the initial decision. This did not constitute error because the appellant has not explicitly claimed that a due process violation occurred. However, we find that these claims, which the appellant did assert below, implicate due process. We therefore, under the circumstances of this case, have decided to consider them on review.

made no attempt to discuss the matter with him.[16] HT at 201:14-202:11 (testimony of the deciding official). It appears that before the agency had completed its review of the appellant's email account and computer and charged him with misconduct, the deciding official expressed to the proposing official his opinion that the removal of the lab notebooks might be cause for removal. RF, Tab 31 at 225:18-226:20 (deposition of the proposing official). The appellant argues that this was improper and demonstrates that the deciding official "prematurely committed himself to a possible removal." RPFR File, Tab 1 at 11-12. We discern no basis to conclude, from the mere fact that the deciding official commented that certain conduct might warrant removal, that the appellant did not receive a meaningful opportunity to respond. As to the appellant's assertion that the deciding official should have more thoroughly investigated the alleged misconduct and interviewed various witnesses "in an official, recorded capacity," *id.* at 12, we disagree. The deciding official testified that he assumed there were no facts in dispute because the appellant did not substantively rebut any of the charges against him in his brief written reply, which we do not find to be improper. HT at 160:13-17 (testimony of the deciding official); *cf. Adams v. Department of Transportation*, 15 M.S.P.R. 72, 83 (1983) (noting that while silence, in and of itself, is insufficient to support disciplinary action, it is permissible to draw an adverse inference from a party's silence in the face of evidence that incriminates him), *aff'd*, 735 F.2d 488 (Fed. Cir. 1984).

¶37    We also have considered whether the appellant's allegations evidence harmful error on the part of the agency in reaching its decision. *See Ward v. U.S.*

---

[16] The appellant alleges that the administrative judge improperly refused to let his counsel engage in questioning regarding the proposing official's discussions with the deciding official, which would have casted doubt upon the deciding official's objectivity in deciding to remove the appellant, and sua sponte suggested that there had been no discussions. RPFR File, Tab 1 at 27. He provides no citation to the record for when this questioning purportedly occurred. *See* 5 C.F.R. § 1201.114(b). Notwithstanding, based upon our review of the record, we see no evidence that the administrative judge acted improperly in this regard.

*Postal Service*, 634 F.3d 1274, 1282 (Fed. Cir. 2011) (holding that, after finding an alleged error does not violate an employee's right to constitutional due process, the Board is required to determine if the agency committed harmful error). To show harmful error, an appellant must prove that the agency committed a procedural error that likely caused it to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Tom v. Department of the Interior*, 97 M.S.P.R. 395, ¶ 43 (2004); 5 C.F.R. § 1201.4(r). Here, we believe that the appellant's allegations do not evidence any procedural error. Assuming arguendo that an error occurred, we cannot find that it caused the agency to reach a conclusion it would not have otherwise reached, given the seriousness of the misconduct at issue in this appeal.

¶38 Based on the foregoing, we find that the agency's charges were properly sustained, that the penalty of removal was within the bounds of reasonableness, and that the removal cannot be overturned based on the appellant's affirmative defenses or a due process violation. We therefore deny the appellant's petition for review and affirm the initial decision, as modified herein.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* title 5

of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B)  (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in Title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode/htm.  Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:
http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at  http://www.mspb.gov/probono  for  information  regarding  pro  bono representation for Merit Systems Protection Board appellants before the Federal

Circuit. The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.